**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RADIOACTIVE ENERGY OF ILLINOIS, LLC, and WALTER ASCHER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.:  08-cv-311 |
| GZ GOURMET FOODS & BEVERAGE, INCORPORATED and R. RICHARD SAXBY, | ) ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion to dismiss Plaintiffs' complaint [10].  For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

**I.        Background**

According to the verified complaint, Plaintiff Radioactive Energy of Illinois ("Radioactive") was formed for the exclusive purpose of marketing, distributing, and selling beverages – and specifically the energy drink known as Radioactive Energy.  Plaintiff Walter Ascher owns Radioactive.  Defendant GZ Gourmet Foods and Beverage, Inc. ("GZ Gourmet") is in the business of creating, manufacturing, marketing, and distributing beverages, and owns the energy drink known as Radioactive Energy.  Defendant Richard Saxby is the president of GZ Gourmet.

Plaintiffs allege that on March 2, 2007, Ascher entered into an exclusive distribution agreement with GZ Gourmet for the distribution and sale of the Radioactive Energy drink.  The March 2007 agreement gave Ascher exclusive distribution rights to distribute the energy drink in Illinois, Florida, and Texas, except to a number of expressly delineated "major" retailers.  In

consideration for those rights, Ascher paid GZ Gourmet $592,600. Ascher also paid GZ $7,400 for the purchase of stock in the energy drink company. On March 14, 2007, the parties entered into a second agreement, granting Ascher exclusive rights to distribute the energy drink in four additional states (Arizona, Nevada, New York, and Wisconsin), except to a number of expressly delineated "major retailers." In consideration for the additional distribution rights, Ascher agreed to sponsor the product, as detailed in the agreement.

Plaintiffs allege that they expended great efforts toward marketing, distributing, and selling the beverage within the seven states in which they had distribution rights. Plaintiffs allege that they procured a NASCAR sponsorship for the energy drink at a cost of $1,000,000 or more, and rented six billboards, at an aggregate monthly rental rate of approximately $57,000. According to Plaintiffs, Defendants also agreed to grant Plaintiffs exclusive distribution rights to distribute the energy drink to Jewel-Osco locations, even though Jewel-Osco would be considered a "major" retailer. On April 20, 2007, Saxby sent Ascher an email confirming the right to distribute to Jewel-Osco with "no strings" attached.

According to the complaint, what drew Plaintiffs to the beverage was the "glow-in-the-dark" feature of the can. Plaintiffs allege that after entering into the distribution agreements, Defendants changed the can's design to all black, stopped using glow-in-the-dark materials, and changed the ingredients in the beverage. Additionally, in or around May or June 2007, Plaintiffs noticed that the energy drink was being stocked on shelves in bars, gas stations, and other "non-major" retailers, through no involvement on Plaintiffs' part. Plaintiffs further learned that others were marketing, distributing, and selling the energy drink in Plaintiffs' territories, and representing themselves as the exclusive Radioactive Energy drink dealers in Illinois. Plaintiffs allege that on May 5, 2007, GZ entered into a "Priority Selling Agreement" with Glow

Distribution granting Glow the right to sell and distribute the product in the Dominican Republic, Greece, Bolivia, Mexico, Puerto Rico, Israel, Taiwan, and all of the United States, except Plaintiffs' seven states. Then, on June 5, 2007, GZ entered into a second, modified agreement in which Defendants gave Glow the right to sell and distribute the product anywhere in the United States, with no exceptions. Plaintiffs allege that Glow began marketing and distributing the beverage in one or more states within Plaintiffs' seven state territory, in direct competition with Plaintiffs. Plaintiffs also contend that Defendants sold the energy drink to Glow at a price below the price that Defendants charged Plaintiffs, and that Defendants repeatedly raised the price on the cases sold to Plaintiffs.

On October 5, 2007, Plaintiffs filed suit in the Circuit Court of the Eighteenth Judicial Circuit, Du Page County, Illinois. Plaintiffs brought causes of action for breach of contract (Count I), unjust enrichment (Count II), fraud (Count III), and breach of implied covenant of good faith and fair dealing (Count IV). On December 18, 2007, GZ Gourmet filed a complaint in this Court against Radioactive and Ascher (Case No. 07-C-7110). On January 14, 2008, the state court case was removed to this Court, and on May 20, 2008, the two cases were consolidated. Defendants in this case then filed a motion to dismiss Plaintiffs' complaint in its entirety.

## II.     Analysis

### A.     Legal standard on motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that

the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

Rule 9(b) of the Federal Rules of Civil Procedure creates exceptions to the federal regime of notice pleading and specifies that, for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). "Read together, Rule 9(b) and Rule 8 require that the complaint include the time, place and contents of the alleged fraud, but the complainant need not plead evidence." *Amakua Development LLC v. Warner*, 411 F. Supp. 2d 941, 947 (N.D. Ill. 2006) (citing *Nissan Motor Acceptance Corp. v. Schaumburg Nissan, Inc.*, 1993 WL 360426, at *3 (N.D. Ill. Sept. 15, 1993)). In other words, the complaint must allege the "the who, what, when, where, and how:  the first paragraph of a newspaper story." *Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)).

Paragraph 13.9 of the distributorship agreements, which were signed by both Plaintiffs and Defendants, state that the validity of the agreements and the rights, obligations, and relations of the parties pursuant to the agreements shall be construed under California law. Defendants assert that California law applies to the substantive issues in this case. Plaintiffs have not resisted the application of California law; rather, they also have addressed the claims under California law. The Seventh Circuit has commented that "before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992). Recognizing the wisdom of the Seventh Circuit's advice, the Illinois Supreme Court has stressed that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007) (quoting *Barron*, 965 F.2d at 197); see also *Dow v. Abercrombie & Kent Int'l, Inc.*, 2000 WL 688949, at *1 n.1 (N.D. Ill. May 24, 2000). In this case, it appears to the Court (and the parties have not suggested otherwise) that the applicable legal standards for the non-contract claims yield the same results whether the Court applies Illinois law or California law. Thus, the Court analyzes Plaintiffs' contract claims under the appropriate California legal standards and analyzes the remaining claims under the laws of both states.

**B.      Breach of Contract**

Under California law, "[a] cause of action for damages for breach of contract is comprised of the following elements:  (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damage to plaintiff." *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (Cal. App. 5th Dist. 2004). In their motion to dismiss, Defendants focus on Plaintiffs' failure to allege their

own performance. However, as Plaintiffs' point out, under California law, a plaintiff can either plead performance "or excuse for nonperformance." In effect, the "hindrance of the other party's performance operates to excuse that party's non-performance." *Erich v. Granoff*, 109 Cal. App. 3d 920, 930 (Cal. App. 2d Dist. 1980).

In paragraphs 26(a) through (h), Plaintiffs allege numerous actions on the part of Defendants that made it "impossible" for Plaintiffs to effectively distribute the energy drink under the agreements, including (i) stopping production of the glow-in-the-dark cans; (ii) changing the color of the cans to black; (iii) changing the ingredients of the drink; (iv) refusing to allow Plaintiffs' websites to interface with Defendants' Radioactive Energy website; (v) failing to provide Plaintiffs with necessary point-of-sale materials; (vi) undermining Plaintiffs' ability to distribute the product by authorizing Glow to sell and distribute the energy drink in Plaintiffs' exclusive territories and selling the energy drink to Glow at a price less than that charged to Plaintiffs so as to permit Glow to undersell Plaintiffs within their exclusive distribution seven state territory; (vii) undermining Plaintiffs' ability to distribute the product to Jewel-Osco themselves; and (viii) agreeing to provide certain quantities of product when Defendants did not have the financial wherewithal to produce and deliver those quantities. Although Plaintiffs have not pled performance of their obligations under the contracts, they have pled "excuse for nonperformance," and that is all that is necessary at this stage. Plaintiffs have sufficiently alleged a breach of contract claim under California law.

### C. Unjust Enrichment

Defendants next argue that Plaintiffs' unjust enrichment claim cannot stand because express distributorship agreements exist. Under California law, "[t]he elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the

expense of another.'" *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (Cal. App. 4th Dist. 2008). However, a quasi-contract action for unjust enrichment does not lie where express agreements exist and define the parties' rights. *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172 (Cal. App. 4th Dist. 2001). "When parties have an actual contract covering a subject, a court cannot – not even under the guise of equity jurisprudence – substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1420 (Cal. App. 4th Dist. 1996). To state a cause of action based on a theory of unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). In substance, Illinois and California law are the same.

Here, Plaintiffs allege that the NASCAR sponsorship, billboards, and other marketing efforts were undertaken at great cost to Plaintiffs and no cost to Defendants, provided Defendants with great visibility, exposure, and publicity for their energy drink, and increased Defendants' sales, profits, and goodwill; that the NASCAR sponsorship, billboards, and other marketing efforts were undertaken on the assumption that Plaintiffs would likewise benefit from increased visibility, exposure, publicity, and sale of the product; that because Defendants undermined Plaintiffs' ability to effectively distribute the energy drink and otherwise realize any benefits at all, Defendants were the only ones to receive and enjoy the benefits of the NASCAR sponsorship, billboard, and other marketing efforts undertaken by Plaintiffs; and that because the NASCAR sponsorship, billboards, and other marketing efforts undertaken by Plaintiffs were at

no expense to Defendants and at a great expense to Plaintiffs, it would be unjust to allow Defendants to retain the entire benefit of the NASCAR sponsorship, billboards, and other marketing efforts undertaken by Plaintiffs without compensation to Plaintiffs. In sum, Plaintiffs have alleged that they expended over one million dollars (procuring the NASCAR sponsorship as well as renting six billboards) and that they received nothing in return.

The second distributorship agreement attached to Plaintiffs' complaint charges Plaintiffs to use their "best efforts to merchandise, promote, advertise, develop and maintain the sales and distribution of Products in the Territory * * *." Defendants argue that because Plaintiffs assert the existence of written contracts, they cannot simultaneously assert that no express contract exists. However, in their memorandum in support of their motion to dismiss, Defendants argue that "[t]he sole actions which plaintiffs claim they took in order to distribute GZ's drink in seven states consisted of procuring a NASCAR sponsorship and renting six billboards, neither of which is alleged to have been a contractual obligation, and neither of which constitutes performance of any obligation." Defs. Mem. at 6. Although Plaintiffs may not recover under a theory of unjust enrichment where there is an adequate remedy at law, Plaintiffs may plead both breach of contract and unjust enrichment in the alternative. See Fed. R. Civ. P. 8(d) (allowing alternate and inconsistent claims in pleadings); see also *Mauro v. General Motors Corp*., 2008 WL 2775004, at *4 (E.D. Cal. July 15, 2008); *Snowney v. Harrah's Entm't, Inc.*, 112 P.3d 28 (2005). Plaintiffs' allegations, if proven and if no adequate remedy at law exists, arguably could amount to a violation of fundamental principles of justice, equity, and good conscience. Accordingly, Plaintiffs have satisfied the pleading requirements for a claim of unjust enrichment.[1]

---

[1] Some California courts have held that there is no cause of action in California for "unjust enrichment." See *Mauro*, 2008 WL 2775004, at *4; *Melchior v. New Line Prods., Inc*., 106 Cal. App. 4th 779, 793 (Cal. App. Ct. 2d Dist. 2003). Rather, "it is a general principle, underlying various legal doctrines and remedies," and it is "synonymous with restitution." *Id*. Even if unjust enrichment is not a cause of action

### D. Fraud

The elements for a fraud claim under California law are: (1) misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). In Illinois, the elements of common law fraud include: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon defendant's statement; and (5) plaintiff's damages resulting from reliance on defendant's statement. See *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP,* 475 F.3d 824, 841 (7th Cir. 2007) (citing *Connick v. Suzuki Motor Co., Ltd.,* 174 Ill. 2d 482 (1996)).

Generally, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. See Fed. R. Civ. P. 8(a)(2). In this regard, a party must simply provide the "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993) (internal quotation marks and citation omitted). However, Rule 9(b) of the Federal Rules of Civil Procedure creates exceptions to the federal regime of notice pleading and specifies that, for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). "Read together, Rule 9(b) and Rule 8 require that the complaint include the time, place and contents of the alleged fraud, but the

---

under California law, a plaintiff may seek restitution damages, independent of how it is labeled. *Mazur v. Ebay, Inc.*, 2008 WL 618988, at *14 (N.D. Cal. Mar. 4, 2008) ("[P]utting substance over form, this court holds that plaintiff may validly seek restitution damages independent of how it is labeled"). Labels also are disregarded at the pleadings stage as a matter of federal law under Rule 8. See, *e.g.*, *Heffernan v. Bass*, 467 F.3d 596, 600 (7th Cir. 2006) ("In federal court under Rule 8, the rules are simple: Notice is what counts. Not facts; not elements of 'causes of action'; not legal theories.").

complainant need not plead evidence." *Amakua Development LLC v. Warner*, 411 F. Supp. 2d 941, 947 (N.D. Ill. 2006) (citing *Nissan Motor Acceptance Corp. v. Schaumburg Nissan, Inc.*, 1993 WL 360426, at *3 (N.D. Ill. Sept. 15, 1993)).  In other words, the complaint must allege the "the who, what, when, where, and how:  the first paragraph of a newspaper story." *Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)).

Defendants assert correctly that the proper pleading standard to apply to Count III is the standard set forth in Rule 9(b), rather than the Rule 8 standard that upon which Plaintiff principally relies.  Plaintiffs' primary fraud allegations are in paragraph 32, which states:

> Leading up to and in entering into the Distributorship Agreements, Defendants made numerous representations to Plaintiffs, including, amongst other things, that Plaintiffs would be the exclusive distributors of Radioactive Energy drink in Illinois, Florida, Texas, Arizona, Nevada, New York, and Wisconsin; that Defendants would not undertake, either directly or indirectly, to sell the product in or for delivery to Plaintiffs' seven (7) state territory [sic] or appoint anyone else to distribute within the Territory; that the product that would be sold to Plaintiffs for distribution was going to be an energy drink sold in a glow-in-the-dark can; and, that the pricing Defendants would charge Plaintiffs for the product would initially be $15.00 per case during the first 90 days, and thereafter would always be the lowest wholesale price prevailing from time to time to any major retail distributor of the Company.  Plaintiffs were even thereafter promised the distribution rights to Jewel-Osco.

Plaintiffs allege that these representations were false, that Defendants knew they were false, that the statements were intended to deceive Plaintiffs and to induce them into entering the distributorship agreements, and that Plaintiffs relied upon these statements.

While Plaintiffs generally allege that Defendants made these representations to Plaintiffs, they have not come close to alleging "the who, what, when, where, and how" necessary to sufficiently plead a fraud claim.  *Borsellino,* 477 F.3d at 507 (quoting *DiLeo,* 901 F.2d at 627). Even assuming that Richard Saxby made all of the representations (Plaintiffs have not specifically alleged that he made the representations, only that "Defendants" made them), they

have not alleged the dates (even approximately) that the representations were made, the locations where they representations were made, and how they were made. Moreover, the alleged misrepresentations refer to promises, not existing facts. For example, Plaintiffs allege that Defendants promised them that "plaintiffs would be the exclusive distributors"; that "Defendants would not undertake" to sell the product in certain territories; that the product "was going to be an energy drink sold in a glow-in-the-dark can"; and that the pricing "would always be the lowest wholesale price prevailing." Compl. ¶ 32. "Misrepresentations of the intent to perform future conduct are not actionable as fraud." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989). "Even a false promise of future conduct with no current intent to fulfill that promise will not constitute fraud." *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 93 (Ill. App. Ct. 1st Dist. 2002). Because Plaintiffs have failed to plead fraud with sufficient particularity, and the alleged misrepresentations that they have identified are not actionable as fraud, the Court grants the motion to dismiss Count II.

### E. Breach of the Implied Covenant of Good Faith and Fair Dealing

Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. See, *e.g.*, *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir. 2000); *LaSalle Bank Nat'l Assoc. v. Paramount Properties*, 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008). Additionally, under California law, courts have dismissed claims for breach of the implied covenant of good faith and fair dealing when they merely reiterate a breach of contract claim and attempt to make a tort claim out of a contract dispute. See, *e.g.*, *Trinity Hotel Investors, LLC v. Sunstone OP Properties, LLC*, 2009 WL 303330, at *3 (C.D. Cal. Feb. 6, 2009); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) ("If the allegations do not go beyond the statement of a mere contract

breach and, relying on the same alleged act, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").  Here, Plaintiffs state that "[i]n every contract there is an implied covenant of good faith and fair dealing," but they do not point to any additional allegations beyond those found in the preceding paragraphs to state the basis for this claim. Because the alleged breach of the duty of good faith and fair dealing is subsumed within Plaintiffs' breach of contract claim and is merely a basis for a breach of contract action in these circumstances, the Court grants Defendants' motion to dismiss as to Count IV.

### F.        Saxby's Liability

The remaining issue is whether Plaintiffs' breach of contract and unjust enrichment claims should survive with respect to both the corporate Defendant GZ and the individual Defendant Saxby, or whether the claims against Saxby should be dismissed.  Defendants contend that the claims against Saxby personally cannot be sustained because all agreements and dealings were made solely between the company, GZ, and Plaintiffs.[2]

Under California law, "[d]irectors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves

---

[2]  Defendants also argue that Radioactive Energy of Illinois, LLC lacks standing to pursue its claims against Defendants because the distribution agreements were signed by Walter Ascher and do not reference Radioactive.  In their memorandum, Defendants do not cite any authority for this position, and in light of the allegations in the complaint and the applicable legal standards, the Court is not persuaded by Defendants' unsupported argument at this stage of the case.  The case law seems clear that a party not named in a contract may qualify as a beneficiary under the contract where the contracting parties must have intended to benefit the unnamed party and the agreement reflects this. *Loduca v. Polyzos*, 153 Cal. App. 4th 334, 341 (Cal. App. Ct. 3d Dist. 2007).  Whether a third party is an intended beneficiary involves construction of the parties' intent, "gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Landale-Cameron Court, Inc. v. Ahonen*, 155 Cal. App. 4th 1401, 1411 (Cal. App. Ct. 2d Dist. 2007).  Plaintiffs allege that the parties contemplated that an entity created by or associated with Ascher, as opposed to Ascher individually, would be the beneficiary of the distributorship agreements at issue and that Radioactive was formed for the exclusive purpose of marketing, distributing, and selling beverages ("specifically the energy drink known as Radioactive Energy").  These allegations are sufficient to survive a motion to dismiss.

individually." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 463 P.2d 770, 775 (Cal. 1970). They do not incur personal liability for the torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done. *Id.* An officer or director may incur personal liability if he participates in a corporate wrong or authorizes or directs that it be done. See *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379-80 (Cal. Ct. App. 2000). However, all of the cases cited by Plaintiffs involve actions in tort, not breach of contract, which is the only type of claim remaining in this case. In contract actions, there is no basis in California law for proceeding against an agent signing solely *on behalf of* a corporation. See, *e.g.*, *Augee v. Hunter*, 2006 WL 360959, at *4 (Cal. Ct. App. Feb. 16, 2006) ("The representative form of the [partners'] signatures in this case is unmistakably demonstrated by the use of the qualification 'by' immediately before their signatures and the placement of the signature line directly under the identification of [the partnership]."); *Main Line Pictures, Inc. v. Basinger,* 1994 WL 814244, at *5 (Cal. Ct. App. Sept. 22, 1994) ("Where it appears on the face of a contract that it is entered into on behalf of the corporation 'by' its agent, the corporation is liable and the agent is not."); see also *Falkowski v. Imation Corp.,* 132 Cal. App. 4th 499, 518 (Cal. Ct. App. 1st Dist. 2005).

In their complaint, Plaintiffs allege that Saxby is GZ's principal, and that GZ "by Saxby" entered into the two distributorship agreements with Ascher. Plaintiffs also reference an e-mail from Saxby to Ascher in which Saxby assures Ascher that he would be given Jewel-Osco distribution rights "in good faith" and with "no strings" attached to help assist Ascher and his "team." The remainder of the allegations reference "GZ" or "Defendants." The first page of both distribution agreements states that the agreements are between GZ Gourmet Food and Beverage, Inc. and Walter Ascher. The only reference to Saxby in either agreement is that the

signature of "R. Richard Saxby" appears on the signature pages of the agreements.  In the instant case, Saxby's signature appears on the distribution agreements below the words "GZ Gourmet Food and Beverage, Inc., a California C Corporation" and "By:," and below his signature reads his title, "Its President."  Moreover, there are no allegations which suggest an "alter ego" or "piercing the corporate veil" theory, nor are there any allegations that Saxby personally guaranteed to fulfill GZ's obligations under the agreements.  Based on the allegations as currently pled, the Court determines that Saxby signed on behalf of the corporation and thus he is not personally liable for breach of contract.  See also *Money Matters Management v. Niche Marketing, Inc*., 2007 WL 3052996, at *3 (S.D. Cal. Oct. 19, 2007); *White & Brewer Trucking, Inc. v. Donley*, 952 F. Supp. 1306, 1315-16 (C.D. Ill. 1997) (finding that "Illinois law is clear that officers and directors are not subject to personal liability based solely upon [ ] status as officers and/or directors" and that defendant president that signed agreements in corporate capacity was not personally liable); *Wottowa Ins. Agency v. Bock*, 472 N.E.2d 411, 413 (Ill. 1984) ("When an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound").

**III.    Conclusion**

For these reasons, the Court grants Defendants' motion to dismiss [10] as to all counts against R. Richard Saxby and also as to Counts III and IV against both Defendants, and the Court denies the motion as to Counts I and II against GZ Gourmet Foods and Beverage, Inc.

Dated:  February 24, 2009

_____
Robert M. Dow, Jr.
United States District Judge